OPINION
On November 3, 1999, appellee, the Stark County Department of Jobs and Family Services, filed a complaint alleging Latrena Campbell born March 2, 1997, and Naudia Spicer born December 17, 1998, to be dependent, neglected and abused children (JU-109472). Mother of the children is appellant, Michelle Campbell. Father of Latrena is Lenon Smith and father of Naudia is Anduwin Spicer. A hearing was held on January 19, 2000 wherein the parties stipulated to a finding that Latrena was a dependant child and Naudia was an abused child. By judgment entry filed January 20, 2000, the trial court granted temporary custody of the children to appellee.
On April 11, 2000, appellant gave birth to Danasia Spicer. On April 12, 2000, appellee filed a complaint alleging this child to be dependant (JU-111718). A hearing was held on June 30, 2000. By judgment entry filed same date, the trial court found Danasia to be a dependent child and granted temporary custody of the child to appellee.
Shortly thereafter, appellant started serving a two year sentence for child endangering. Said charges arose from incidents involving Naudia.
On August 9, 2000, appellee filed motions for permanent custody. A hearing was held on September 20, 2000. During said hearing, appellee moved to change custody of the children to a maternal relative, Geraldine Bryant. The trial court granted the motion and gave legal custody of the children to Ms. Bryant.
On August 22, 2001, appellee filed a motion for relief from judgment. A hearing was held on October 4, 2001. By judgment entry filed October 10, 2001, the trial court granted said motion and vacated the change of custody to Ms. Bryant.
On November 14, 2001, appellee filed amended motions for permanent custody. A hearing was set for January 8, 2002. On January 7, 2002, appellant filed a motion to continue the hearing date. Prior to hearing, the trial court denied the motion. By judgment entry filed January 23, 2002, the trial court granted the motions and awarded appellee permanent custody of the children. Findings of fact and conclusions of law were filed on same date.
Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I "THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO SCDJFS."
 II "THE TRIAL COURT ABUSED ITS DISCRETION IN OVERRULING APPELLANT'S MOTION TO CONTINUE."
 I
Appellant claims the trial court erred in granting permanent custody to appellee. We disagree.
As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279.
R.C. 2151.414(E) sets out the factors relevant to determining permanent custody. Said section states in pertinent part as follows:
 "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353
of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 "(5) The parent is incarcerated for an offense committed against the child or a sibling of the child;
 "(6) The parent has been convicted of or pleaded guilty to an offense under division (A) or (C) of section 2919.22 * * * of the Revised Code and the child or a sibling of the child was a victim of the offense * * *.
"(10) The parent has abandoned the child.
 "(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.
 "(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
"(16) Any other factor the court considers relevant."
R.C. 2151.414(B) enables the court to grant permanent custody if the court determines by clear and convincing evidence that it is in the best interest of the child. R.C. 2151.414(D) sets out the factors relevant to determining the best interests of the child. Said section states relevant factors include, but are not limited to, the following:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
At the time of the hearing, January 8, 2002, appellant was serving a prison term for two counts of child endangering. T. at 23. She was living at Oriana House with a release date of April 7, 2002. T. at 23-24. Upon her release, appellant was scheduled to live with her mother. T. at 24. While at Oriana House, appellant was going through "transitional control" to integrate back into the community. T. at 25. She had a job at Marc's for a month, but lost it. Id. On the day of the hearing, appellant was to start a job as a receptionist. T. at 26. During her two year incarceration, appellant attended parenting classes, but her parole officer did not feel it was the best program as it was inmate run. T. at 27-28. During post release, contact with the victim (Naudia) would not be permitted. T. at 24-25, 40.
The case plan was in effect before appellant's incarceration, but appellant was not able to complete the Goodwill Parenting requirement. T. at 11-12. The other requirements, Quest and Melymbrosia evaluations, were completed. T. at 12. However, appellant did not follow through with the ongoing therapy recommendation from Melymbrosia. T. at 12. While appellant was in prison, the visitations and contacts with the children were limited. T. at 13. Beth Wengerd, the ongoing caseworker assigned to the case, opined appellant did not complete the case plan. T. at 15.
In its findings of fact and conclusions of law filed January 23, 2002, the trial court found appellant has not "sufficiently remedied the problems which led to the removal of the children." The trial court noted appellant's acts of child endangering involving Naudia and that as a result of these offenses, appellant would not be permitted contact with the child during post release control. The trial court concluded "due to the consequences of her own actions (her incarceration)," appellant "effectively abandoned her children and has not substantially, satisfactorily completed her case plan for reunification."
We find these findings to be supported by the record and we find the conclusion that appellant has effectively abandoned her children to be correct. It is clear from the record that although appellant was expected to be released from incarceration three months after the hearing, she would not be permitted to visit or have contact with Naudia.
It was established that the best interest of the children would be permanent custody. The foster mother had been counseled in the management of Naudia and understood Naudia's problems were going to take some time to resolve. T. at 38. Linda Turner, Ph.D., Naudia's psychologist, opined Naudia needs the consistency of permanent placement, and foster care pending adoption or relative placement would be in her best interests. T. at 38, 42. Ms. Wengerd opined appellant posed a safety risk to the children. T. at 52. Ms. Wengerd felt the other two children could safely be placed with Ms. Bryant and there was a possibility that Naudia could be placed with Ms. Bryant in the future. T. at 64, 66.
Based upon the record, we find the trial court did not err in granting appellee permanent custody of the children.
Assignment of Error I is denied.
 II
Appellant claims the trial court erred in failing to continue the hearing for her attendance. We disagree.
The grant or denial of a continuance rests in the trial court's sound discretion. State v. Unger (1981), 67 Ohio St.2d 65. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
It is clear from the record that appellant's parole officer forbid her to attend the hearing. T. at 30. It is also clear that he will not permit appellant to have contact with Naudia during the period of post release control. T. at 25.
The children languished in foster care and relative placement since 1999. Appellant was vigorously represented at the January 8, 2002 hearing by Attorney Christine Johnson who had represented appellant throughout the case. T. at 68.
Although appellant was not present for the hearing, Attorney Johnson represented that the testimony was essentially uncontested, however, appellant wished for more time to comply with the case plan:
 "I have been working with Michelle Campbell throughout this case and I have seen a mother that made a huge great mistake, but has been doing everything in her power to better herself and remedy the issues that caused her to act the way she did in the beginning. She has not been able to complete her case plan because she has been incarcerated, however, she's been working programs through the prison system, she is working now, she's going to be released in early April, she has a job already, she will have a home to reside in. I believe she deserves additional time to work on her case." T. at 68-69.
Given the nature of appellant's defense, we cannot say the trial court abused its discretion in denying the continuance request.
Assignment of Error II is denied.
The judgment of the Court of Common Pleas of Stark County, Ohio, Juvenile Division is hereby affirmed.
By FARMER, P.J. EDWARDS, J. and BOGGINS, J. concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio, Juvenile Division is affirmed.